BARBARA J. VALLIERE (DCBN 439353)
Acting United States Attorney

BARBARA J. VALLIERE (DCBN 439353)
Chief, Criminal Division

ROBERT DAVID REES (CABN 229441)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7210
    FAX: (415) 436-7234
    Email: robert.rees@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>SEAN CLARK CUTTING, et al.,<br><br>    Defendants. | NO. CR 14-139 SI<br><br>DECLARATION OF ASSISTANT UNITED STATES ATTORNEY ROBERT DAVID REES<br><br>Hearing Date: December 20, 2016<br>Time: 11:00AM<br>Court: Hon. Susan Illston |

I, ROBERT DAVID REES, declare as follows:

1. I am a member in good standing of the California State Bar and an Assistant United States Attorney representing the United States in the above-captioned matter. I am admitted to practice before this Court. I have personal knowledge of the matters set forth herein, and if called as a witness I could competently so testify.

2. Pursuant to a Grand Jury subpoena, on or about October 26, 2016 I received from the FDIC a number of documents relating to a civil enforcement action they took against Sean Clark Cutting and Brian Scott Melland. Included in that production were copies of "15 Day Letters" alleging misconduct by Cutting and Melland relating to their involvement in concealing from Sonoma Valley

DECL. OF AUSA REES

Bank officials the involvement of Bijan Madjlessi in six loans relating to the Petaluma Greenbriar real estate project and in a loan to 101 Houseco. The letters were dated January 30, 2012. These allegations are similar to the allegations in the superseding indictment. *See* Exhibit A (15 Day Letters).

3. In that same FDIC production was a response from Neal Stephens at the law firm of Jones Day to the 15 Day Report on behalf of Cutting. *See* Exhibit B (Stephens Response). The response is dated March 7, 2012.

4. On March 18, 2014, the defendants were indicted in this district. The original indictment focused primarily on the 101 Houseco loan and the actions taken by the defendants to secure ownership for Madjlessi in the Park Lane Villas East real estate project. Since that date, working with U.S. Attorney's Office personnel and investigating agents, I have worked to produce comprehensive discovery to the defense.

5. For example, by December 31, 2014, we made approximately four separate productions to the defense of discovery material totaling approximately 1,188,512 pages of material. By December 31, 2015, we made approximately five separate additional productions to the defense of discovery totaling approximately 1,462,155 pages of material. In 2014 and 2015, the government produced approximately 321,276 additional pages of material obtained by the search warrants executed in this case. By May 17, 2016, when the Court set this matter for trial, we made approximately four separate additional productions to the defense of discovery totaling approximately 82,468 pages of material.

6. Since trial was set in the matter on May 17, 2016, we have endeavored to obtain and produce additional relevant material to the defense for their use at trial. Since May 17, 2016, we have made approximately six separate productions to the defense of discovery material totaling approximately 324,422 pages of material. We believe we are in compliance with the Court's deadline of December 1, 2016, set on October 28, 2016, of making any potential existing *Brady* material available to the defendants.

7. By stipulation of the parties and filing and consideration of motions, I believe no more than 59 days of the default 70 allowed have run under the Speedy Trial Act.

8. Among those discovery productions, I produced to the defense, among other items, a set of Cutting's emails that had been collected by the Federal Deposit Insurance Corporation, Office of

Inspector General ("FDIC-OIG"), one of the criminal investigating agencies working on the case, on July 1, 2014. I also produced a hard drive of materials obtained at the closure of Sonoma Valley Bank that had also been collected by the FDIC-OIG on February 9, 2015.

9. On January 27, 2016, in response to several motions to dismiss filed by the defendants, this Court issued an order granting, in part, some of those motions, but inviting the government effectively to cure certain issues the Court identified in a superseding indictment. *See* Dkt. 162. This caused the government to consider bringing such a superseding indictment to cure those issues. By May 17, 2016, the Court set a trial date in this matter of March 20, 2017. On August 5, 2016, the Court set a deadline for the government to file a Superseding indictment by the status conference that occurred on October 28, 2016. Because the case appeared that it would, indeed, go to trial at that point, the government then also began to consider ways in which a superseding indictment could help bring a more comprehensive case before a petite jury. I have frequently both participated in and observed cases where more comprehensive and/or more serious charges, including those with mandatory minimum prison sentences, have been brought in a superseding indictment in anticipation of a jury trial, and would describe the practice as common.

10. Beginning in the Spring of this year, our investigation began to focus on any misconduct by the defendants that may have affected Sonoma Valley Bank's primary federal regulator, the FDIC. We began working with and subpoenaing information from FDIC enforcement personnel who had been involved with the presentation of the above-captioned 15 Day Reports.

11. In order to ensure full and fair discovery, we obtained through subpoena a large amount of material relating to FDIC bank examinations that occurred in the relevant time period along with comprehensive productions relating to the efforts the FDIC enforcement personnel took with respect to their investigation. Virtually all of the discovery provided in the last two months has been material that has come from the FDIC as a result of those efforts.

12. We learned around the first two weeks of November, 2016 that the FDIC as Receiver also maintained a large set of data related to their takeover of Sonoma Valley Bank when it failed and their subsequent handover to West America Bank. We also learned that while some data had been seized in anticipation of potential litigation revolving around the failure of the bank, most of the data was related

to the duties of the FDIC to maintain the workings of the bank as receiver. We then determined to provide the former set of documents to the defense, while apprising the defendants of the latter. We accomplished both on November 9, 2016.

13. The defense has in the past asked for certain material that we had already provided to be provided again in a different format. For example, in late October, 2015, the defense asked that we reproduce certain discovery as single page documents instead of multi-page documents. We worked to accommodate the defense and, on January 22, 2016, provided reformatted discovery to the defense in accordance with their request.

14. We have taken a number of steps to make the core allegations of our case clear and transparent. We obtained a speaking indictment that contains detailed factual allegations in its 21 pages. We have provided a discovery index to the defense that is created from our own discovery management spreadsheet. We have also provided to the defense on November 18, 2016, more than four months before trial, Grand Jury transcripts that include over a hundred separate exhibits outlining evidence supporting the superseding indictment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true, and correct.

Executed this 6th day of December, 2016, at San Francisco, California.

ROBERT DAVID REES
ASSISTANT U.S. ATTORNEY

DECL. OF AUSA REES

4