UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Susan Illston, Judge

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )    **NO. CR 14-00139 SI** |
| | ) |
| SEAN CLARK CUTTING, BRIAN | ) |
| SCOTT MELLAND, and DAVID JOHN | ) |
| LONICH, | ) |
| | ) |
| Defendants. | ) |
| —————————————————————————— | ) |

San Francisco, California
Tuesday, February 14, 2017

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiff:
Brian J. Stretch
United States Attorney
450 Golden Gate Avenue
San Francisco, CA  94102
**BY:  ROBERT D. REES**
**ADAM REEVES**
**ARVON PERTEET**

For Defendant David John Lonich:
Coleman & Balogh LLP
235 Montgomery Street, Suite 1070
San Francisco, CA  94104
(415) 391-0440
(415) 373-3901 (fax)
**BY:  ETHAN ATTICUS BALOGH**

Reported By:  Lydia Zinn, CSR No. 9223, FCRR, Official Reporter

1  **APPEARANCES**:

2  For Defendant Sean Clark Cutting:

3                          Jones Day
                         1755 Embarcadero Road
                         Palo Alto, CA  94303

4                          (650) 739-3939
                         (650) 739-3900 (fax)

5                  BY:  **NEAL J. STEPHENS**
                      **JEFFREY RABKIN**

6

7  For Defendant Brian Scott Melland:
                         Law Offices of George C. Boisseau
                         50 Santa Rosa Avenue, 5th Floor

8                          Santa Rosa, CA  95404
                         (707) 578-5636

9                          (707) 578-1141 (fax)
                  BY:  **GEORGE CLAUDE BOISSEAU**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Tuesday - February 14, 2017**                    **11:17 a.m.**

<u>**P R O C E E D I N G S**</u>

---000---

**THE COURT:**  Good morning.  You may all be seated.

**THE CLERK:**  Okay.  Calling Criminal 14-139,
United States versus Lonich, Cutting, and Melland.

**MR. REEVES:**  Appearances?  Adam Reeves, Robert Rees,
and Arvon Perteet for the United States.  Good morning,
Your Honor.

**THE COURT:**  Good morning.

**MR. BALOGH:**  Good morning, Your Honor.  Ethan Balogh
on behalf of David Lonich.  He's present before the Court on
pretrial release.  I ask that he be permitted to sit at counsel
table.  Thank you, Your Honor.

**MR. STEPHENS:**  Good morning, Your Honor,
Neal Stephens and Jeff Rabkin on behalf of Mr. Cutting, who is
also present before the Court.

**MR. RABKIN:**  Good morning.

**THE COURT:**  Good morning.

**MR. BOISSEAU:**  Good morning, Your Honor.
George Boisseau, on behalf of Brian Melland, who is present
before the Court.

**THE COURT:**  Good morning.

First, I'm really sorry to be late.  I apologize.  There
was an accident on the freeway coming here, and I got stuck.

So I'm sorry for that.

So this is the Government's motion to reconsider my last Order, having to do with the Superseding Indictment. First I wanted to ask the Government: Did you ever cite to me or urge me to find under Rule 48 prior to now?

**MR. REEVES:** Not specifically, no, Your Honor.

**THE COURT:** No, which is really too bad. I see the argument under Rule 48. And that's something I certainly could have taken into account and looked at, had it been brought to my attention; but it wasn't. And now I have ruled how I have ruled. And I don't see a way to undo what I did, without finding that it was erroneous, which I don't think it was.

**MR. REEVES:** We agree that the remedy was not erroneous, but I respectfully do not agree that that's an automatic, Your Honor.

Clearly -- I think the Court's Order endeavored ultimately to follow *United States versus Gregory*. And there was a good basis for doing that. Appropriately, the Court weighed some of the *Barker* factors, and it made a finding that there was a Speedy Trial violation on a factual record that the Government's not here to dispute at this time.

It did not, however, make a finding that there was a constitutional Speedy Trial violation. And that distinction was never really adequately drawn out in the debate and argument as it unfolded before the Court. If the Government

1  had some part in that, we were simply responding to the Defense

2  motions --

3       **THE COURT:**  It wasn't a distinction that wasn't drawn

4  out.  It was a distinction that wasn't mentioned.

5       **MR. REEVES:**  Well, certainly the question is whether

6  or not this rises to the level of a constitutional violation.

7  And it does not appear that the Court made a finding that it

8  does; and instead, followed *Gregory* in finding that there was a

9  Speedy Trial violation.  It did not rise to the level of

10  constitutional Speedy Trial violation, and justified, as

11  *Gregory* directs, the filing of the new Indictment.

12      So in that respect, while we acknowledge certainly that

13  the motion was raised in that context, and the Court certainly

14  weighed the *Barker* factors, we do not agree, with respect, that

15  the Court made a finding that there was a constitutional

16  violation.  And there were good reasons not do that.  So I can

17  repeat some of those reasons.

18      I think the Court had a lot of latitude with regard to how

19  to deal with the core --

20      **THE COURT:**  I think I did, too.  And that's why I'm

21  feeling regretful that all those options weren't more fully

22  outlined.  I think I could have gone a number of different

23  ways; but I think the way I went was finding a constitutional

24  violation.

25      **MR. REEVES:**  I'm sorry that Your Honor feels that

way, because I don't see it reflected in the record.  I accept

the way the argument unfolded, but certainly the Court weighed

very carefully all of the *Barker* factors, and made certain

findings, some of which I think are analyzing what was raised

in *Barker*, but, consistent with *Gregory*, are not rising to the

level of a constitutional violation.

The deep prejudice that the Court, I think, in candor,

rightly put its finger on is the question of prejudice to the

defendants of going to trial in March on the Superseding

Indictment -- okay? -- and the discovery and the issues around

that, and the fairness of going to trial at that time.

By separating out the original case from the new case, as

the Court directed in its Order, I think the Court remedied or

fashioned a remedy that directly addressed that core prejudice.

And that's reflected in the decision or the Order that

dismissed the new charges without prejudice.  And I think that

was, at bottom, a well-founded Order based on the factual

findings that the Court made.

Again, the Government disputes some of those, but we are

not here to debate them with you any further.  That was the

right remedy.  And the reason that was the right remedy is

because the prejudice does not rise to a constitutional level.

It simply does not.

The Government had perfectly good reasons -- valid

reasons -- within the statute of limitations for bringing the

1  new charges, as we did.  They are serious.  They are

2  appropriate.  They are timely in all respects.

3       And the Court, as it's weighing these considerations, I

4  think, arrived at the right solution, and specifically cited

5  *United States versus Gregory*, which specifically authorizes the

6  outcome that the Court did.

7       All we want to do is comply with that Order.  We do not

8  think you got the remedy wrong.  We just want to clarify the

9  basis for that.  I think there was a back-and-forth in the

10  course of the colloquy and the hearing about how -- whether the

11  Court could dismiss with or without prejudice.

12       **THE COURT:**  Well, I asked, and I thought the

13  Government told me I could.

14       **MR. REEVES:**  And that's exactly correct, based on

15  *Gregory*; based on, you know, alternative ways the Court can

16  manage the core prejudice here.  Essentially, that's exactly

17  right.

18       I think there are different ways to come to the same

19  conclusion to address the primary concern the Court really had.

20  None of those need to -- and we, in our judgment, do not --

21  arise to a constitutional violation.

22       We want to execute on the direction that the Court

23  suggested in its Order.  We don't need to build in error into,

24  you know, the eventual record here, or continue to litigate

25  this.  We think your evaluation of the *Barker* factors does not

automatically mean that you made a finding that there was a
constitutional violation.  So pursuant to *United States versus*
*Gregory*, we want to do exactly what you've asked us to do.  We
just want to do it in a way that protects the record for the
future.  And, respectfully, I think the Court had very good
reasons to land where it did.

Again, this is a serious case.  We all we ask is an
opportunity to pursue these charges in an appropriate way.  It
does not have to happen in March.  We're prepared to go to
trial on the original Indictment in March.  We're a
hundred percent ready to do that on whatever schedule everyone
decides is appropriate here.

The new charges should rise or fall on their own merits.
They are timely.  They're appropriate.  They are serious.  And
I think there's a good basis for us proceeding in exactly the
manner the Court suggested.  We'd like to do so, please.

**THE COURT:**  Thank you.

**MR. STEPHENS:**  Thank you.  Good morning, Your Honor.

**THE COURT:**  Mr. Stephens.

**MR. STEPHENS:**  Yeah.  Very quickly, Your Honor.

I think, as the Court is aware, we moved under the
Sixth Amendment; not Rule 48.  That's laid out on pages 1, 8,
9, and 13 of our original motion.

The Court analyzed the motion under the Sixth Amendment by
running through the *Barker* and the *Doggett* analysis.  There's

some discussion here today as to whether that was in the
record.

    During the hearing there was some questions from the Court
about whether this was a Sixth Amendment challenge.  And both
Mr. Balogh and I confirmed that, yes, this is a Sixth Amendment
challenge.  Mr. Balogh also confirmed that it's the Defense
view that the Sixth Amendment violation would result in
dismissal with prejudice.  We had filed our proposed order with
that language.

    I think, in reflecting back on it, yeah, it could have
been clearer and more direct in the hearing about that, quite
honestly.  And it's one of those things, when you walk out of
court or after a deposition or cross-examination, there are
always one or two things that kind of nag at you.  That was one
of the things that nagged at me a little bit.

    But if -- and since we've gone through the *Barker*
analysis, with the findings, which aren't challenged here by
the Government, and with what both parties agree is the case
law here, it does require dismissal with prejudice.

    And then we also laid out a couple bases in the motion for
reconsideration, which I think Your Honor has already alluded
to.  One is the Local Rules about whether or not this issue is
something that could be raised under a motion for
reconsideration at the time; and also whether there was a
waiver, since our motion wasn't premised on Rule 48 or a

concept of severance, but that seems to be what the Government

has raised after receiving your Order.

And I would raise one other factor, Your Honor -- and I'm

happy to answer any questions you have -- and that's this.  Our

view of jurisdiction in the case -- the Government has filed a

Notice of Appeal.  That Notice of Appeal is basically on hold,

pending the Court's ruling on the motion for reconsideration.

In between their filing of the motion to reconsider, we

filed a motion to dismiss the original Indictment, based on, in

our view, a failure of the Government to conform with what I'd

call your 14-day or 21-day Order related to identifying

specifically identifying *Brady*, *Giglio*, exculpatory, or

impeachment-level evidence.

They filed a reply brief last night.  Our -- I'm sorry.

They filed their opposition brief last night to our motion to

dismiss for terminating sanctions.  We file our reply brief

this coming Friday.  That matter is currently on the Court's

schedule to be heard on the 24th.  So in my view, the Court has

jurisdiction over that motion, as well, if the Court elects to

hear it, by holding off on a ruling on the motion to

reconsider.

But if it's the Court's preference to rule on the motion

to reconsider, in my view, their Notice of Appeal then kicks

in, and the Court's divested of jurisdiction, and the matter

goes up to the Ninth Circuit.

THE COURT:  Is that correct?  I wanted to know about that, too, since the Notice of Appeal has been filed.

MR. REEVES:  Yes.

THE COURT:  Does that mean I don't have jurisdiction to do anything, except the reconsideration?

MR. REEVES:  No, not in our judgment.

I think that the Court retains jurisdiction to manage its docket.  And I would cite *United States versus Emens*, E-m --

THE COURT:  Like, for example, I had expected after the ruling, assuming we hadn't had this particular motion filed, that we'd go ahead and try the case in March.  And I figured you'd appeal from the other Order, but that I didn't expect that that would interfere with going ahead with the original charges in March.  Is that right, or not, do you think?

MR. REES:  Your Honor, if that Notice of Appeal is valid -- and right now we don't have Washington --

THE COURT:  You filed it.  Right?

MR. REES:  We filed it, but there's a chain of command it has to go through --

THE COURT:  Oh.

MR. REES:  -- before it's official.  So right now it's like a prophylactic Notice of Appeal.

But if it is approved and we do go forward, then, no, the Court would not retain jurisdiction.

1      **THE COURT:**  To do anything?

2        **MR. REES:**  To try the case.  It would go to the --

3      **THE COURT:**  So it's like an automatic stay of

4   whatever else is --

5        **MR. REES:**  Yeah.  The jurisdiction would go to the

6   appellate court.  And that makes some sense, because if we do

7   appeal, it would be our position that we should be able to have

8   the whole Superseding Indictment tried, not --

9      **THE COURT:**  Right.

10       **MR. REES:**  But I do think that if Your Honor changes

11  the basis of your ruling and does the same remedy, which is the

12  dismissal without prejudice, then I think that that would

13  obviously go into the calculation of whether there would be an

14  appeal.  And it would be maybe more likely that we would have a

15  trial on just -- on that, because we would be prepared as soon

16  as we could, consistent with the Grand Jury's schedule, to go

17  ahead and essentially sever the case, and get a second

18  Superseding Indictment that basically just goes back to the

19  original Houseco.  It fixes the "and others" language, et

20  cetera.  And it would just be a new case for the -- the new --

21  the new, I guess, Petaluma Greenbriar-related charges that

22  would go on their own.

23      **THE COURT:**  So if I don't change anything, and you

24  appeal -- and assume that you view it as with prejudice,

25  because of the way I've ruled.  And then it gets appealed.  And

1  then after the appeal is decided, if I was right, then we try

2  the first case --

3          **MR. REES:**  Yes.

4          **THE COURT:**  -- all those years later?

5      And if I was wrong --

6          **MR. REES:**  We'd charge the whole case.

7          **THE COURT:**  -- then we'd try both cases all those

8  years later?

9          **MR. REES:**  Yeah.

10          **MR. REEVES:**  Yes, Your Honor.  I think it's --

11          **THE COURT:**  None of these is a really great solution.

12          **MR. REEVES:**  If I can just address the Court's issue,

13  I think if the Court does not reverse the remedy in its Order

14  and does not dismiss with prejudice, it is unlikely that the

15  Government's going to pursue any appeal.  We're simply then

16  going to most likely proceed to trial on the Houseco Indictment

17  in March, and file a new Indictment as to the new charges that

18  were in the Superseding Indictment.  Okay?

19      And two points that Counsel made, if I may please respond

20  --

21          **THE COURT:**  What did you just say?  Start what you

22  just said all over again.  If --

23          **MR. REEVES:**  From the very beginning?

24          **THE COURT:**  No.  Just that -- I couldn't tell if you

25  just meant if I agreed with you, or if I didn't agree with you.

1      **MR. REEVES:**  If you do not disturb the remedy in your

2  existing Order --

3      **THE COURT:**  So if I leave it without prejudice.

4      **MR. REEVES:**  Correct.

5    -- then I think it's highly unlikely that the Government's

6  going to appeal.

7      **THE COURT:**  Right, but in order to do that, I have to

8  change the Order -- is what you're saying?

9      **MR. REEVES:**  I do not agree, with respect, for at

10  least three reasons -- or I'm sorry -- at least two reasons.

11      One, I agree with Counsel that the record and the argument

12  could have been clearer on its basis.  He's right to be nagged

13  about certain things.  It's true the motion was initially made,

14  but in the debate and the hearing on the argument, there were a

15  lot of alternatives and a lot of discussion associated with

16  what could or couldn't happen, what would or wouldn't be with

17  or without prejudice, et cetera.  And in that context, I also

18  acknowledge the Government could have been clearer, except we

19  were clear that we thought we had authority to bring the new

20  case under *Gregory*.  And we maintain that position.

21      The second point is the Government does not agree and we

22  have not conceded that the *Barker* factors have been met.

23  Counsel just represented again that we're not challenging that.

24  We're not challenging the factual findings of the Court that

25  the status of the discovery combined with the new charges

create a potential prejudice for the defendants going to trial

in March.

We're not here to debate that, but we do debate and

continue to debate the *Barker* factors. And I would like to

specifically say, if I may, please, that in the Government's

initial response on or around December 6, 2016, with the

greatest regret, the position that I took lacked precision on

the first *Barker* factor. Okay?

And I'd like, if I could, while the Court is evaluating

what to do here -- I'd like to more clearly state that

position, if I may, please. Our position is that with regard

to the first *Barker* factor, that there was no Speedy Trial

delay on the original charges, because those charges will be

tried in March 2007 according to the original schedule. Okay?

There's no delay on the original charges, which were part of --

half of, roughly -- the Superseding Indictment. So there can

-- there is no delay on that part.

And also there is no delay on the new charges, because

those new charges were brought for the first time in

October 2016, when the Sixth Amendment right to a Speedy Trial

first attached.

So in that sense, neither one of those components

represents a delay.

That was not exactly the position the Government took in

our response. I apologize for that. The work and effort that

has gone into the reconsideration and further evaluation of
that -- I wanted to clarify that position to the Court. And it
is our view for that reason that the Government does not
concede that the first *Barker* factor has been met. And we
contested the other three *Barker* factors.

And I think, again, going back to the grounding in the
Court's ruling, the Court is obviously weighing and working
through the considerations raised by *Barker*, but it is also
primarily addressing the sense of prejudice it identified
associated with going to trial in the Superseding Indictment,
given the status of the discovery. And the remedy that you
fashioned was the correct one to address that core problem.

Two cases.

And I think if we were to proceed in that manner -- and,
to clarify, I think the Court has plenty -- abundant authority
to make a ruling that these counts should be severed, or that
they should be dismissed without prejudice, pursuant to
Rule 48. If you choose to sort of strengthen the outcome and
prevent further litigation about this, you would arrive at
exactly the same outcome for the same reasons. So in our view,
the Court has an abundant authority do this, and would be
consistent with the logic and ruling of the order that you did.

And finally, you know, there was an argument that somehow
it's not appropriate for the Government to raise this as a
motion to reconsider. I would --

1    Two points.

2    One, I note that the Defense has joined in a partial

3 request for a motion to reconsider.  And they are really the

4 ones that are asking you to change your ruling.

5    We are simply asking you to clarify the basis, which was

6 not explicit in your Order, to avoid error down the line.

7    So that's my response to their objection to our compliance

8 with the Local Rule.

9         **THE COURT:**  All right.  Thank you.

10         **MR. BALOGH:**  May I make three points, Your Honor?

11    Unless Mr. Stephens would like to go first.  That's fine.

12 Patience is my virtue.

13         **MR. STEPHENS:**  In response to Mr. Reeves' comments

14 right there, he has now brought forward a new position on the

15 first *Barker* factor, which isn't raised either in the moving

16 papers or the reply that I recall.  So it's not only -- I don't

17 think it's appropriately --

18         **THE COURT:**  The target is kind of --

19         **MR. STEPHENS:**  Yeah.  So I would object on that

20 basis.

21    He also said something procedurally that I think is a

22 little odd for the Government, which is that they would refile

23 the superseding again if you dismissed without prejudice, even

24 though their papers indicate that they agree that the

25 appropriate remedy under the law, under the *Barker* and *Doggett*,

1  is dismissal with prejudice.  So that is concerning to me, that

2  the factual findings of the Court's Order under *Barker* on the

3  Sixth Amendment analysis yields a result that should be

4  dismissal with prejudice.

5      And they're saying that they would still come back and

6  file in the face of that case law.  It's going to --

7          **MR. REEVES:**  No.

8          **MR. STEPHENS:**  -- raise a host --

9      If I understood what he said.  That's what I thought

10  Mr. Reeves said.

11      That would raise a host of litigation downstream in the

12  appellate courts for years and years and years.

13      My suggestion is to amend the Order so it's dismissal with

14  prejudice.  The Superseding Indictment goes away from all time.

15  If they want to appeal that to the Ninth Circuit, they can

16  appeal that to the Ninth Circuit.  If we lose in the

17  Ninth Circuit, we'll come back.  And then we know what's in

18  front of us for the trial.

19      My other suggestion is that the Court hold off until the

20  Court has an opportunity to review and rule on the motion to

21  dismiss for terminating sanctions, because that also attacks

22  the original Indictment.  And then if the Court rules in the

23  Defense favor on that, and the Government chooses to appeal,

24  then everything's in front of the Ninth Circuit.

25          **MR. REEVES:**  There was a piece of that that is

1  incorrect.

2        **THE COURT:**  I didn't understand your argument, to be

3  quite --

4        **MR. BALOGH:**  Thank you, Your Honor.

5     I'll just a make a few points.

6     One, I think we all agree -- Your Honor just said when you

7  began your colloquy this morning with counsel that it found a

8  constitutional violation.  And upon that --

9        **THE COURT:**  Well, the motion was made on that basis,

10  and the motion was granted.

11        **MR. BALOGH:**  Right.  And that --

12        **THE COURT:**  Now, counsel says if I read it carefully

13  and look at the specific findings, maybe I didn't go far enough

14  to actually find that.  So that's what he's saying.

15        **MR. BALOGH:**  Yeah.  I don't think that's true, but I

16  think this morning you said you made a constitutional finding.

17  And you can always pull that back, too.  You're working through

18  this.

19     To the extent there was lack of clarity -- not from this

20  Court -- I was clear as you could be on the record.

21  Sixth Amendment violation requires with prejudice.  Period.

22  Full stop.  And I think that should be the Order of the Court.

23     I do think I disagree when they try to replay the *Barker*

24  factors.

25        Here, for my second point, further delay of the Second

1  Superseding Indictment only further prejudices the defendant.

2  We established in the moving papers the extreme loss of memory

3  from the four years ago, when their agents wrote up a

4  recommendation to bring the PGA, LLL -- legal lending limit --

5  conspiracy with Houseco.  They wrote that up in 2010/2011.

6  They intentionally delayed that.  And we know from the most

7  recent interviews that the Board members, who were critical

8  witnesses, have lost memory of critical events.  That is only

9  going to get worse if we're going to try the Second Superseding

10  Indictment in late 12017 or late 2018.

11      I also disagree that the Sixth Amendment didn't attach

12  when they made this system to game the system.  Our

13  Sixth Amendment rights on these charges started with the first

14  Indictment in 2014.  And that's why the first *Barker* factor is

15  clearly in our favor.

16      The last point I would make -- and I think this is

17  important for Your Honor to look into, because I think I'm

18  right -- your assessment is correct.  They filed a Notice of

19  Appeal.  What is covered on Notice of Appeal does not divest

20  this Court of jurisdiction over this case.  It divests this

21  Court of jurisdiction to concern the subject matter of the

22  appeal, except for ancillary matters that are subject to that

23  appeal.  That is it.  It's limited.

24      We can try this case in March.

25      If they file that Notice of Appeal, what Your Honor can't

do after it decides reconsideration is jimmy that language any

further; couldn't reconsider it further.  But that's it.

We could absolutely have this trial on the Houseco

allegations that were brought in 2014.  They can appeal your

dismissal with prejudice.  I've had two cases with you go up on

appeal.  They were both affirmed on both sides of it.  So I

have confidence in the Court's rulings, but we'll take our

chances with that.

But what they're asking for only -- it rewards what was

intentional gamesmanship.  They gamed it.  In January of 2016

you said supersede.  They said they were going to buff it out,

and they worked the system to file it for maximum tactical

advantage to hurt these gentlemen; and that was wrong.  And the

willfulness and intentionality of their conduct merits with

prejudice, on itself.  And to say they can try it in a year

from now rewards what exactly they wanted to do.  They don't

get the full benefit of it; but they suffer no downstream

effects of what was -- if it was not misconduct, it was

certainly not in good faith.  This was intentional.

And the Court's Order should reflect that in this

courtroom in this courthouse when the Court issues an order,

you come into compliance in good faith in a timely manner; and

if you don't and if you try to game it, there are downstream

consequences for you, because I will deter this kind of

behavior in the future.

1    That's all I have, Your Honor.

2         **THE COURT:**  Thank you.

3         **MR. REES:**  Your Honor, I just --

4         **MR. REEVES:**  May I respond, please?

5    Who's arguing the facts now, Your Honor?

6    Okay.  Maximum tactical advantage.

7    I would note that in *United States versus Gregory*, the

8    Government filed an Indictment four days before the trial date.

9    And when that was eventually heard by the Ninth Circuit -- no,

10   not a constitutional violation.  That decision was reversed.

11   We filed our Indictment five months before the trial.

12   The Court made no finding of bad faith.  As a matter of

13   fact, you went out of your way -- and we appreciate this -- to

14   say that there is no basis for bad faith here.

15        **THE COURT:**  No, but it was intentional.  I said it

16   was intentional.

17        **MR. REEVES:**  You did say it was intentional.  And

18   I've thought about that word very carefully.  Seems to me that

19   I can't argue to you that it's not intentional in the following

20   sense.  We intended to bring these charges when we brought the

21   Superseding Indictment.  And there was an intentionality

22   through a lot of 2016 that that was centered on.

23        **THE COURT:**  Well, and it was also intentional in the

24   sense that you could have brought them in the first instance.

25   They've been there the whole time.  And so it was an

intentional choice to go just on the one, and then bring in the second set late in the day.

**MR. REEVES:** With respect, I do not agree with that, Your Honor. I think it is one thing to raise questions about a complex set of facts relating to Petaluma Greenbriar in the course of early interviews.

It's another thing to sort of litigate and prepare that case. It's another thing, then, to sort of be faced with a need to re-present the case. And then the question is: What kind of case will we go to trial on? Those are calculation that is we make every day in our office that are consistent with -- I would argue -- good faith and, frankly, good lawyering on behalf of the Government. And I don't -- I do not see a difference here.

There's no basis to say that there was a sandbagging. To me, I -- and the Court certainly has not found that. Counsel is raising that again. I'm not here to reargue the facts, but that is unfair; that is not in the record; and that is not supported by the record.

And if you want, you know, deeper analysis of how certain inquiries about certain loans at certain times eventually turn into the framing of a case in its initial conception, followed by a decision, you know, to try the whole case, I do think that there was an intentionality to the Government's conduct that was consistent with good faith; not bad faith.

1    And -- but I'm not here -- I'm not trying to relitigate

2  this.  I'm trying to follow the Court's Order.

3    I do think that you balance -- the Court properly balanced

4  the equities here, and came to the correct conclusion.  And

5  there's enough latitude for you to weigh the *Barker* factors,

6  come to a conclusion that defendants have been denied their

7  Speedy Trial rights, but have not been denied their

8  Sixth Amendment constitutional Speedy Trial rights, and impose

9  exactly the remedy that you did.

10    And that would be an outcome that does not yield a

11  refiling of the Superseding Indictment, as Counsel has

12  incorrectly argued.  It would yield precisely what *Gregory*

13  instructs and what the Court has suggested as a possibility.

14  We will fix the pieces of the Houseco Indictment for which

15  there were objections and rulings by the Court relating to the

16  language "and others."  I was working on that last night.

17    And we will file a new action that presumably will be

18  assigned a new number and will be assigned to a new Judge that

19  we will need to relate to Your Honor.  And that case will then

20  proceed on whatever course it's going to take.  And that would

21  be an appropriate outcome, given these facts.

22    There is no bad faith here, Your Honor.  The Court did not

23  make that finding.  Counsel is wrong to bring that into this

24  record.  And I think in the absence of that, where the

25  prejudice is really centered on what happens in March, whether

1  it's fair to go to trial, even five months ahead of time --

2  fair to go to trial on the Superseding Indictment.

3      I think the Court wrestled with a difficult decision; came

4  to a fair outcome.  And we really would urge that the Court not

5  be --

6      You know, we will appeal this if we have to because you

7  dismiss with prejudice, but these are valid charges that I

8  think we are entitled to bring.  And the logic of the Court's

9  ruling would support that.

10         **THE COURT:**  All right.  Thank you.

11         **MR. STEPHENS:**  Just real quickly, Your Honor, I don't

12  think *Gregory* applies here.  In *Gregory*, it was a

13  negligence-driven analysis under *Barker* and *Doggett*.  The

14  Court's findings here are deliberate and intentional conduct,

15  which, as I emphasized in the hearing, make it, you know, an

16  overwhelming case for dismissal.  And we know under *Barker* that

17  that dismissal is supposed to be with prejudice.

18         **THE COURT:**  All right.  Thank you.  Well, the matter

19  will be submitted.

20      I'm sorry I can't rule for you right now.  I have to think

21  about this a little bit.  I'm concerned about this case.  I

22  view the charges and the Superseding Indictment as very serious

23  charges, and I think it would be extremely unfortunate if they

24  can't be fairly vetted on their merits.  So I'm going to take a

25  look at this, and I will let you know as soon as I can what --

1      MR. BALOGH:  Thank you, Your Honor.  We're before the

2  court on the 24th.  And I think it was last week the Government

3  filed -- or I think it was Friday.  My memory is getting bad

4  enough.  They filed a response to your order regarding the

5  motion to suppress and a declaration.  May I have the

6  opportunity this week to reply to that?  And can we have a

7  discussion about that when we reconvene on the 24th?

8      THE COURT:  Yes.

9      MR. BALOGH:  Thank you, Your Honor.  I'll do so.

10     MR. STEPHENS:  I can give a couple quick cites on

11 appellate jurisdiction, if that is a concern, at all.

12     THE COURT:  Sure.

13     MR. STEPHENS:  As far as the District Court retaining

14 jurisdiction while a motion to reconsider is pending, I'd cite

15 the Court to *United States versus Healy*, 376 United States 75,

16 1964; which is then followed by *United States versus Dieter*,

17 429 U.S. 6, 1976; *United States versus Ibarra*, 502 U.S. page 1,

18 1991; and then the Ninth Circuit, *United States versus*

19 *Belgarde*, 300 F. 3d., 1177, from 2002.

20     And then on the point I was making about jurisdiction

21 divesting to the Ninth Circuit is *United States versus Sadler*,

22 480 F. 3d. 932 et 941, a Ninth Circuit case out of 2007.

23     THE COURT:  Thank you.

24     MR. REEVES:  Your Honor, I'm going to add to that

25 list *United States versus Emens*, please.  565 F. 2d., 1142,

1  Ninth Circuit, in 1977.

2          **THE COURT:**  Okay.  Thank you.

3          **MR. REEVES:**  Thank you.

4          **MR. BALOGH:**  Thank you, Your Honor.

5      (At 11:50 a.m. the proceedings were adjourned.)

6  I certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter.

8

9  *Lydia Zinn*

10  _____  February 14, 2017
   Signature of Court Reporter/Transcriber    Date

11  Lydia Zinn

12

13

14

15

16

17

18

19

20

21

22

23

24

25